```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
YEMELYAN SHIPKEVICH,

            Plaintiff,
                                            **MEMORANDUM AND ORDER**
    -against-                                08-CV-01008 (FB) (JMA)

STATEN ISLAND UNIVERSITY
HOSPITAL, ARAMARK, INC.,

            Defendants.
--------------------------------------------------------x
```

*Appearances*

| | |
|---|---|
| *For the Plaintiffs:* | *For the Defendants:* |
| ANDREA MARIA PAPRELLA, ESQ. | STEVEN M. SWIRSKY, ESQ. |
| Liddle & Robinson, L.L.P. | CARRIE CORCORAN, ESQ. |
| 800 Third Avenue | Epstein Becker & Green, P.C. |
| New York, NY 10022 | 250 Park Avenue |
| | New York, NY 10177 |

**BLOCK, Senior District Judge:**

Yemelyan Shipkevich ("Shipkevich") asserts claims of employment discrimination against defendants Staten Island University Hospital ("SIUH") and Aramark, Inc. ("Aramark")[1] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"); and New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL").

Shipkevich contends that defendants (1) discriminated against him by banning the

---

[1] SIUH contracted Aramark to provide management services for its clinical engineering group. Shipkevich and Aramark settled, and all claims against Aramark were dismissed on May 12, 2011.

speaking of Russian, withholding a wage increase, and selectively disciplining him; (2) subjected him to a hostile work environment; and (3) retaliated by terminating him from his position as a biomedical equipment engineer.[2]

Defendant SIUH moves for summary judgment under Fed. R. Civ. P. 56 on all claims. For the reasons that follow, the motion is denied.

I

**A. Retaliation**

*1. Protected Activity*

The parties dispute whether Shipkevich engaged in a protected activity prior to his termination. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (a plaintiff must prove that ". . . his employer knew of the protected activity . . ."). Shipkevich claims that he complained numerous times both verbally and via e-mail to no avail about discrimination, and that he finally took the formal step of filing a written grievance, in accordance with his union's collective bargaining agreement ("CBA"), in which he specifically requested that SIUH "cease discrimination" against him. Paparella Aff., Ex. 44. SIUH argues that it never "knew of the protected activity" and that it never received the grievance. *Kessler,* 461 F.3d at 206. These are clearly issues of fact that cannot be resolved on summary judgment.

---

[2]At oral argument on June 30, 2014, Shipkevich agreed to withdraw a claim of discrimination based on allegations that the hospital allocated overtime inequitably in violation of the CBA.

*2. Causation*

Because the parties dispute whether Shipkevich engaged in a protected activity, the Court cannot grant summary judgment on grounds that causation would be lacking. Shipkevich was terminated in early November, two and a half months after allegedly filing the grievance. If a jury finds that the hospital knew of the complaints in the grievance, temporal proximity sufficient to infer a causal connection would be established. *See Kessler*, 461 F.3d at 206 ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 127-28 (2d Cir. 2013) ("[E]ven gaps of four months between the activity and the adverse action can support a finding of causation that is sufficient for a prima-facie case.").

*3. Pretext*

SIUH argues that, even if Shipkevich can establish his prima facie case, he cannot show that its purported reasons for firing him are pretextual. Here again, there are issues of material fact. On October 20, 2005, a disciplinary action was issued to Shipkevich following an incident related to SIUH's Pouch Terminal facility. Shipkevich's supervisor, Bart Graver ("Graver"), directed him to use his personal vehicle for transportation to perform preventative maintenance on laboratory equipment at Pouch Terminal. Shipkevich alleges that this conflicted directly with an order issued earlier in the year not to use personal vehicles for employer activities. SIUH denies that Shipkevich received conflicting orders.

Moreover, the New York State Division of Human Rights ("DHR") heard from

3

witnesses and investigated the circumstances of Shipkevich's termination. The DHR concluded—in part because it found that SIUH had issued conflicting orders—that there was probable cause that SIUH engaged in discrimination in firing Shipkevich.[3] While the Court cannot simply adopt the DHR's conclusions, the report is evidence that a reasonable juror could find that the hospital's explanations were lacking, thus creating a triable issue concerning pretext.

*4. Administrative Exhaustion*

Shipkevich satisfied the requirement to administratively exhaust his retaliation claim by filing his DHR complaint, in which he sought relief for unlawful discrimination based on "national origin and religion" under both Title VII and the anti-retaliation provision of NYSHRL, Section 296(7). Corcoran Decl., Ex. 69, at 3, 5.

Defendant's motion is denied with respect to the retaliation claim.

**B. Discrimination**

Shipkevich offers various examples to support his claim that he was treated differently

---

[3]Admissibility of the DHR report is left to the Court's discretion, and is appropriate on a summary judgment motion, where concerns about jury confusion and the risk of protracting trial proceedings are absent. *See Paolitto v. John Brown E&C, Inc.,* 151 F.3d 60, 64-65 (2d Cir. 1998).

than non-Jewish Russian-born employees. The Court takes each in turn.

*1. Russian Speaking Ban*

The parties dispute whether SIUH banned Russian-born employees from speaking their native language, while other employees who natively spoke Spanish and other non-English languages were not subject to the rule. The hospital also argues that employee mandates to speak English do "not evince national origin or ethnic discrimination." Def.'s Mem. Support of Summary Judgment, at 11, Dkt No. 137. SIUH's argument, however, misses the point of the allegation: that whether stylized as a ban on speaking Russian or as an English-only mandate, the rule was selectively applied only to Russian-born employees.

*2. Delay in Processing Wage Increase*

In December 2004, Shipkevich passed the Certified Biomedical Engineering Technician's ("CBET") Exam, which entitled him to a 10% pay increase under the hospital's policy. Although his colleagues were granted their raises without delays, Shipkevich did not receive his salary increase until June 11, 2005 (which had to be made retroactive to January 1, 2005). Here, the parties dispute the essence of the claim: whether or not it arose from a mistake. Once again, while the Court does not adopt the conclusions of the DHR report, the report itself demonstrates that a reasonable juror could choose not to credit SIUH's explanation that it merely forgot to process Shipkevich's raise while suffering no such memory lapse for his American-born colleague, Robert Gordon ("Gordon").

*3. Three Disciplinary Actions*

The parties dispute nearly all material facts surrounding three disciplinary actions that

5

SIUH issued against Shipkevich. SIUH claims that the first disciplinary action was issued because Shipkevich copied a co-worker's timecard, while Shipkevich contends that he copied only his own. Shipkevich also contests the second incident, in which an order to return surgical equipment led to his alleged outburst—his version of the incident describes confusion and lack of communication about his chain of command, while SIUH asserts that Shipkevich was aware that Mitch Bonagura ("Bonagura") was acting as a substitute for his usual manager. Moreover, although SIUH based this second disciplinary action in part on Shipkevich taking an unauthorized break from his work site without a supervisor's permission, Shipkevich maintains that he only took 2 breaks, one of which was authorized by Bonagura and the other was in response to Bonagura's alleged outburst.

In the third incident, discussed previously in connection with the retaliation claim, SIUH alleged that Shipkevich's termination was based on insubordination; while Shipkevich maintains that he was *following* an order not to use his personal vehicle. Finally, the parties dispute whether SIUH engaged in selective discipline by issuing Shipkevich these three formal actions while not disciplining Gordon after he reportedly assaulted other Russian-born colleagues.

In sum, the Court grants summary judgment solely on the claim based on inequitable overtime allotment, and denies the motion for the remaining claims of discrimination.

## C. Hostile Work Environment

Shipkevich's final claim, alleging a hostile work environment, presents "mixed question[s] of law and fact that are especially well-suited for jury determination." *Schiano*

*v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir.2006) (citations and quotations omitted). First, the parties dispute what, if anything, Senior Vice President of Operations Nicholas Caruselle ("Caruselle") and Shipkevich's co-worker Gordon, said to him and other Russian-born employees over the years he worked there. Unlike cases where courts have found a plaintiff's complaint insufficient because it alleged only isolated instances of verbal harassment, Shipkevich alleges that the comments were ongoing.

Even if the alleged comments do not, by themselves, rise to a level to establish a hostile work environment, a court must consider circumstances as a whole. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir.2003) (courts should "examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.").

Incessant and highly offensive remarks, in combination with selective discipline, and Gordon's display of KGB badges, could be sufficient to establish that the environment was "permeated with discriminatory intimidation, ridicule, and insult, that [wa]s sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Rivera v. Rochester Genessee Reg. Trans. Auth.,* 743 F.3d 11, 20 (2d Cir. 2012) (internal citations and quotations omitted).

Because the material facts the Court would need to consider are disputed, SIUH's motion is also denied on Shipkevich's hostile work environment claim.

**III**

For the foregoing reasons, defendant's motion for summary judgment is denied.

**SO ORDERED**

          **/S/ Frederic Block**
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 30, 2014